fendant as president of the bank, who refused to transfer the stock because the Plummers were indebted upon other notes discounted by the bank for their accommodation. The assignment to the defendant was made on the 31st of May, 1816. The note which was secured by it fell due on the 21st–24th January, 1817. Jerome Plummer died on the 31st of December, 1816. The assignment by Gerrard, the survivor, was made by a deed of trust duly executed, acknowledged, and recorded, dated the 8th of January, 1817. The tender of the 2,000 dollars by the plaintiffs to the defendant was on the 8th of February, 1817, before which day the other notes which had been discounted by the bank for the accommodation of the Plummers, to the amount of 5,500 dollars, had become payable and were unpaid. The charter was granted March 3d, 1817. By the 4th article of the association, it was declared that, "every stockholder may sell and transfer his stock in the said bank, or any part thereof, at his pleasure, not being less than one complete share or shares, the transfer being made in the bank books in the presence and with the approbation of the proprietor or his lawful attorney." The assignment to the plaintiffs was not made on the books of the bank, but was contained in a general deed of assignment of all the effects of the firm of Jerome & Gerrard Plummer. By the 11th section of the act of congress of the 3d of March, 1817 (3 Stat. 383), which incorporated the bank, it is enacted that the shares shall be transferable only on the books of the bank; but all debts actually due and payable to the bank (days of grace for payment being passed), by a stockholder requesting a transfer, must be satisfied before such transfer shall be made, until the president and directors shall direct to the contrary.

These facts being found by a special verdict, the case was argued by Mr. Taylor, for plaintiffs, and Mr. Swann, for defendant.

THE COURT at November term, 1820 (THRUSTON, Circuit Judge, absent), rendered judgment on the special verdict for the plaintiff, observing that the rights of all the parties were fixed before the charter, and that until the charter the bank had no general lien on the stock of individual stockholders.

---

NEALE (JONES v.). See Case No. 7,483.

NEALE (LEONARD v.). See Case No. 8,259.

---

## Case No. 10,070.
### NEALE v. MINIFIE.
[2 Cranch, C. C. 16.] [1]
Circuit Court, District of Columbia. Dec. Term, 1810.

FALSE IMPRISONMENT—JUSTICE OF PEACE—MALICE.

A justice of the peace is not liable in an action of false imprisonment under an illegal warrant issued by him, unless it be issued maliciously.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

This was a motion for a new trial on the ground of misdirection of the jury, by the court, at the last term, in instructing the jury that it was not necessary for the plaintiff to prove malice, in an action against the defendant, a justice of the peace, for false imprisonment, the justice having committed the plaintiff for profane swearing, and making a disturbance in the market.

THE COURT (nem. con.) granted the new trial, being satisfied that a justice of the peace is not liable in an action for false imprisonment, for issuing an illegal warrant on which the plaintiff is imprisoned; unless it be done maliciously.

---

## Case No. 10,071.
### NEALE v. PEYTON.
[2 Cranch, C. C. 313.] [1]
Circuit Court, District of Columbia. May Term, 1822.

NOTES — INDORSEMENT — DEMAND ON MAKER — WHEN TO BE MADE—INSOLVENCY OF MAKER.

Demand of payment on the 5th of July, of a note due on the 1st–4th of July, is too late to charge the indorser, and the insolvency of the maker will not excuse the delay.

Assumpsit against the indorser of a promissory note. The note was put into the Bank of Potomac for collection, and fell due on the 1st–4th of July. The note was not given out, and no demand of payment was made on the maker of the note until the 5th of July. The maker was insolvent.

THE COURT (THRUSTON, Circuit Judge, absent,) said it was too late, and that the insolvency of the maker did not excuse the delay.

---

NEALE (QUEEN v.). See Case No. 11,504.

NEALE (UNITED STATES v.). See Case No. 15,859.

---

## Case No. 10,072.
### NEALE v. WALKER.
[1 Cranch, C. C. 57.] [1]
Circuit Court, District of Columbia. Jan. Term, 1802.

PLEADING AT LAW—GENERAL ISSUE—STATUTE OF LIMITATIONS.

The defendant cannot avail himself of the statute of limitations upon the general issue.

Assumpsit for goods sold and delivered. Issue non assumpsit.

Mr. Simms, for defendant, contended that under the act of Virginia of 1793, § 9 (Rev. Code, p. 115), every article which appeared in the plaintiff's account to be charged more than one year before the action brought, ought to be rejected by the jury; upon which Mr. Taylor, for plaintiff, moved the court to instruct the jury that they were not to re-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

gard the act of limitations, as it was not specially pleaded.

Mr. Simms. for defendant, contended that this act differs from common acts of limitation in that it was imperative to the jury. The seventh section enacts that all actions or suits founded upon any account for goods, wares, and merchandise, "sold and delivered, or for articles charged in any store account, shall be commenced and sued within one year next after the cause of such action or suit, or the delivery of such goods, &c. and not after." The ninth section declares, that "to prevent any doubt in the construction hereof. it is hereby declared, that the before mentioned limitation of one year, shall take place and be computed from the respective dates or times of delivery of the several articles entered or charged in any such account; and that all such articles as shall have been of more than one year's standing when the action or suit was commenced, shall be disallowed and rejected, and verdict shall be given, or judgment rendered for no more than the amount of such articles as appear to have been actually charged or delivered within one year next before the commencement of the suit as aforesaid."

But THE COURT decided that the time was not put in issue by the plea of non assumpsit; and the jury were only to try the issue joined, and so instructed the jury.

———

NEALE'S ADM'R (DUFFY v.). See Case No. 4,119.

———

## Case No. 10,073.

### In re NEBE.

[11 N. B. R. (1875) 289.] [1]

U. S. District Court, E. D. Michigan.

BANKRUPTCY — PROOF OF DEBT — HOW AUTHENTICATED—NOTARIAL SEAL—PROOF TAKEN BEFORE ATTORNEY FOR CREDITOR—COSTS—FEES TO NOTARIES.

1. A proof of debt taken before a notary public is not admissible unless authenticated by the official seal as well as the signature of the notary. It must appear from the impression of the seal, that it is the seal of the notary who employs it to authenticate his acts.

[Cited in Re Port Huron Dry Dock Co., Case No. 11,293. Disapproved in Re Phillips, Id. 11,098.]

2. Proofs of debt taken before the attorney of the creditor are not admissible.

3. No fees are taxable as costs in the bankruptcy proceedings and entitled to priority of payment, under section 28 [of the act of 1867 (14 Stat. 530)], to notaries for taking proofs of debt.

[In the matter of Henry Nebe, a bankrupt.]

The register certified that a deposition taken before W. M. Lillibridge, a notary public, was offered as a proof of debt due A. G. Ellair & Co. The form of the jurat is: "Subscribed and sworn before me this 26th day of

[1] [Reprinted by permission.]

October. A. D. 1874. W. M. Lillibridge, notary public, Wayne county, Michigan." Below the signature is an impression on the paper, in the usual form of an official seal, containing the words "Notary public, Wayne county, state of Michigan." It not appearing that this was the official seal of the notary, and it being conceded that it was used in common by him and other notaries; and it appearing also that the notary was the attorney of the creditor, the register declined to accept it as satisfactory, and therefore certified the questions arising upon it into court for determination by the district judge.

By HOVEY K. CLARKE, Register: The act amending the bankrupt act of June 22, 1874, § 20 [18 Stat. 186], authorizes notaries public to take proofs of debt against the estate of a bankrupt—"such proof to be certified by the notary, and attested by his signature and official seal." On this provision several questions of practice arise, which ought to receive an authoritative determination.

First. The statute requires the act of the notary to be authenticated by his signature and his official seal. There is nothing from which it can be inferred that one of these is of less importance than the other, and therefore an authentication by either would be imperfect without the other. But what is an "official seal"? A seal at common law was an impression upon wax. By statute in this state, and by statute or usage in many others, a scroll made with a pen will serve the purpose of a private seal. But this, so far as I know, has never been extended to corporate, or official seals. As regards these, it has required no little litigation to settle the question that an impression on wax is unnecessary; but all the cases hold that an impression on paper is indispensable. But an impression of what? Public seals—and a notary's seal is a public seal—are held to prove themselves. Is any stamp which a notary chooses to affix to his signature entitled to recognition as his official seal? Such a construction strikes me as a burlesque upon the provisions of the act of congress, which makes both signature and seal necessary to the authentication of the notary's act. And if as a public seal it proves itself, must it not show on its face what it is that it proves; not only that it is a seal, but that it is the seal of a notary public; and in order to show that it is the seal of the notary who employs it, that it must bear his name. If it be admitted that the seal in this case is the seal of a notary public, it is just as clearly the seal of every other of the notaries public, in number about one thousand, who hold office in the county of Wayne; and what then becomes of the provisions of the law which require the notary's act to be attested by "his official seal"? In the case of Gage v. Dubuque & P. R. Co., 11 Iowa, 314, the court holds "that unless the name of a notary public and the state in which he acts are engraved upon his seal so that an impression can be